**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Arthur J. Doiron

   v.             Civil No. 16-cv-326-PB

Capt. FNU Edmark et al.[1]

**REPORT AND RECOMMENDATION**

  Plaintiff Arthur J. Doiron, an inmate at the New Hampshire State Prison ("NHSP") proceeding pro se, has filed a complaint (Doc. No. 1). The complaint is before the court for preliminary review, pursuant to 28 U.S.C. § 1915A(a) and LR 4.3(d)(1).

**Standard**

  In determining whether a pro se pleading states a claim,

---

[1]The defendants named in this action are: New Hampshire State Prison ("NHSP") Capt. Edmark, whose first name is unknown ("FNU"); NHSP Lt. FNU Carroll; NHSP Case Manager/Case Counselor FNU Whiting; NHSP Sgt. FNU Lydick; NHSP Cpl. FNU Elis; NHSP Cpl. FNU Turcotte; NHSP Nurse Olivia, whose last name is unknown; NHSP Corrections Officer ("CO") FNU McCauley; NHSP CO FNU Murphy; NHSP CO FNU Young; NHSP CO FNU Dionne; NHSP CO FNU Nimoroski; NHSP CO FNU Caruso; NHSP CO FNU Lamay; NHSP Cpl. FNU Boissonault; NHSP Lt. FNU Morin; NHSP Maj. FNU Fouts; NHSP Warden Michael Zenk; New Hampshire Department of Corrections ("DOC") Commissioner William Wrenn; and DOC employee Chris Kench. All defendants are sued in their individual and official capacities.

the court construes the pleading liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Disregarding any legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a facially plausible claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## **Discussion**

### I.   **Address Book**

#### A.   Allegations

On June 10, 2016, New Hampshire Department of Corrections ("DOC") Investigator J. Azzara, while speaking with Doiron and other inmates in Doiron's cell, directed NHSP Sgt. Lydick to take Doiron's address book, compare Doiron's handwriting to handwriting involved in an investigation.  Although Doiron states his handwriting did not match, the officers did not return the address book, which contained family information and stamps.  Doiron made numerous requests for the return of his address book, but he did not get it back.

#### B.   Due Process Claim

Doiron alleges that his Fourteenth Amendment right not to be deprived of his property without due process was violated

when NHSP officers took and failed to return address book. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).  New Hampshire provides an adequate postdeprivation remedy pursuant to N.H. Rev. Stat. Ann. §§ 541-B:9 and 541-B:14 (providing a post-deprivation means of recouping property loss attributable to the State).  Because an adequate state remedy is available to Doiron, he cannot state a Fourteenth Amendment due process violation arising from the loss of personal property, and the district judge should dismiss this claim.

## II.  **Handcuff Incident**

### A.   Allegations

On June 17, 2016, Corrections Officer ("CO") Nimorowski and CO Caruso placed both Doiron and Doiron's cellmate in handcuffs, to return the inmates to their cell in the NHSP's Secure Housing Unit ("SHU").  The officers excessively tightened the handcuffs, and did not double-lock them.  Generally, inmates are not handcuffed while in their cells, but Nimorowski and Caruso left Doiron and his cellmate in the excessively tight handcuffs after locking them into their cell.

3

After twenty minutes, CO Lamay walked by Doiron's cell.
Doiron asked Lamay to uncuff him.  Lamay responded, "If you're
in your cell you're not in handcuffs."  Another officer then
walked by the cell, and refused Doiron's request to see a
supervising officer.  By that time, due to the COs' failure to
double-lock his handcuffs, Doiron had accidentally further
tightened his handcuffs.

After another twenty to thirty minutes, Lamay again walked
by Doiron's cell, along with NHSP mental health staff member
Darryl Bazydlo.  Bazydlo asked Doiron how he was doing, and
Doiron told Bazydlo that he was left in his cell in excessively
tight handcuffs, and as a result, had urinated and defecated on
himself.[2]  Bazydlo asked Lamay why Doiron and his cellmate were
handcuffed.  Lamay first stated that they were not in handcuffs,
but Bazydlo insisted that Lamay look into the cell.  Lamay then
uncuffed them.

B.   Excessive Force and Failure to Intervene and Protect

The Eighth Amendment protects a prisoner from excessive
force that amounts to cruel and unusual punishment.  See Skinner
v. Cunningham, 430 F.3d 483, 488 (1st Cir. 2005).  In

---

[2]Doiron states that he has Crohn's Disease, and that he
cannot always control his Crohn's symptoms, which apparently
include incontinence and/or urinary and defecatory urgency, when
he is stressed.

determining whether a plaintiff has established a claim for excessive force, the "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).  "[D]e minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind," do not violate the Eighth Amendment.  Id. at 9-10 (internal quotation marks and citations omitted).  Further, an officer has a duty to intervene to protect an inmate when he sees another officer using excessive force against a prisoner.  See Davis v. Rennie, 264 F.3d 86, 113-114 (1st Cir. 2001).  The duty to intervene is triggered "only when an officer has 'a realistic opportunity to intercede.'"  Farrah v. Gondella, 725 F. Supp. 2d 238, 246 (D. Mass. 2010) (quoting Davis, 264 F.3d at 98 n.10).  The First Circuit has suggested that the duty to intervene rule applies in the Eighth Amendment context, when a prison guard has an opportunity to intercede when another guard uses excessive force on a prisoner.  See Davis, 264 F.3d at 113.  Cf. Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002) ("The restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and

excessively employ fists, boots or clubs."). A corrections officer may also be held liable for violating an inmate's Eighth Amendment rights, by failing to protect the inmate, if the officer's action or inaction manifested deliberate indifference to a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 847 (1994).

Doiron has stated sufficient facts to assert Eighth Amendment excessive force claims against Nimorowski and Caruso, and Eighth Amendment failure to intervene and failure to protect claims against Lamay, relating to the excessively tightened handcuffs. In an Order issued simultaneously with this Report and Recommendation (hereinafter "Simultaneous Order") the court directs service of an excessive force claim against Nimorowski and Caruso, and failure to intervene and failure to protect claims against Lamay, in their individual capacities.

C.    Negligence[3]

Doiron alleges that Nimorowski, Caruso, and Lamay, are liable to him for the tort of negligence because they breached a

_____

[3]Doiron specifically asserted a negligence claim, rather than an intentional tort claim, such as an assault claim against Nimorowski and Caruso, arising out of the handcuff incident. The court's finding that Doiron has stated sufficient facts to allow a negligence claim to proceed in this matter is without prejudice to Doiron's ability to move to amend his complaint to assert an intentional tort claim in this matter, if he can assert facts and circumstances so warranting.

6

duty of care they owed to Doiron to protect him from foreseeable harm, by fastening his handcuffs too tightly and then leaving him in them for too long, and also for failing to double-lock the handcuffs, resulting in further tightening of the handcuffs. In the Simultaneous Order, the court directs service of negligence claims against Nimorowski, Caruso, and Lamay.

III. **Denial of Medical and Mental Health Care**

    A.   Allegations

On June 10, 2016, after Lamay removed Doiron's handcuffs, Doiron requested medical attention for his wrists. Lamay told Doiron he did not need medical attention. Bazydlo again intervened, stating that Doiron's hands were almost blue, and directed Lamay to call the medical department. When the nurse responded to Lamay's call she told Doiron that the numbness and pain in his hand would go away within a few days, and that he should go to sick call if he had further problems. On sick call rounds on June 10 and 11, 2016, a nurse and two SHU officers refused Doiron's requests for ice and ibuprofen for his wrists and hands.

Upset by the incident with the handcuffs, Doiron asked SHU officers if he could see someone from mental health. The officers on duty at SHU refused Doiron's request, stating that a mental health staff member had already been there that day, and

that they would not call for mental health assistance for Doiron

again that day unless he was suicidal.

On June 26, 2016, Doiron told NHSP Nurse Olivia that the

numbness in his hands had not gone away, and requested that a

diagnostic x-ray be taken.  Nurse Olivia denied Doiron's request

for x-rays and stated that Doiron had to allow more time for

healing.

B.    Eighth Amendment Health Care Claims

Doiron complains that his Eighth Amendment rights were

violated by the denial of adequate medical and mental health

care that he requested concerning harm he alleges he incurred

during the handcuff incident.  "[T]o prove an Eighth Amendment

violation, a prisoner must satisfy both of two prongs: (1) an

objective prong that requires proof of a serious medical need,

and (2) a subjective prong that mandates a showing of prison

administrators' deliberate indifference to that need." Kosilek

v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014), cert. denied, 135

S. Ct. 2059 (2015).  Deliberate indifference, however, is not

demonstrated where an incarcerated plaintiff does not allege a

complete lack of treatment, but merely disputes the choice of a

certain course of treatment.  See id. at 92.

Doiron asserts that he was dissatisfied with the medical

care he received from the NHSP nurses, and that SHU officers

denied him immediate access to a mental health professional.
Doiron was seen by a nurse for his wrists, who examined him and
determined that he would heal with time.  Further, although
Doiron's requests for ice and ibuprofen were denied, nothing in
the complaint here shows that any individual who denied that
request was aware of any serious risk to Doiron's health that
would occur were he not provided with ice and/or ibuprofen.
Moreover, the complaint also does not indicate that Doiron was
denied all mental health care, only that his same-day request to
see a mental health care provider was denied because he was not
suicidal.

Even assuming, without deciding that Doiron could
demonstrate a "serious medical need" under the circumstances
presented, he has not demonstrated that any defendant acted with
deliberate indifference to deny him medical or mental health
care.  To the extent he disagrees with any defendant's diagnosis
or chosen treatment with regard to Doiron's medical or mental
health care, such disagreement does not demonstrate the
existence of a constitutional violation.  For these reasons, the
district judge should dismiss Doiron's Eighth Amendment claims
asserting the denial of constitutionally adequate medical or
mental health care.

C.    Medical Negligence

To the extent Doiron asserts that defendants' failure to provide sufficient medical or mental health care amounts to medical negligence under state law, the district judge should decline to exercise its supplemental jurisdiction, see 28 U.S.C. § 1367, over that claim, without prejudice to Doiron's ability to assert those claims in state court.

**IV.   Legal Mail**

Doiron alleges that on June 17, 2016, NHSP Cpl. Ellis refused to give him his legal mail.  Another officer gave him the mail the following day.

To the extent Doiron is attempting to assert a claim that his right to access the courts was violated by Ellis's actions, he must show, among other things, that his ability to pursue a nonfrivolous claim that he has a right to litigate, has been actually hindered by the deprivation alleged.  See Lewis v. Casey, 518 U.S. 343, 349-52 (1996); see also Guglielmo v. N.H. State Prison, 111 F.3d 122, 1997 U.S. App. LEXIS 8616, at *3, 1997 WL 205290, at *1 (1st Cir. 1997) (unpublished table decision) (citing Lewis, 518 U.S. at 356) (inmate must show "that an actionable claim has been lost or rejected or that presentation of the claim is currently being prevented" due to the defendants' actions)).  Doiron has alleged no injury and no

10

other basis to find that Ellis violated his rights, and the
district judge should dismiss Doiron's claim alleging that his
rights were violated by a one-day delay in receiving legal mail.

## V.   Harassment

### A.   Allegations

Doiron allege that on June 22 and 23, 2016, NHSP officers
subjected Doiron to the following acts of harassment:

- Lamay made a statement to another inmate on SHU that made
reference to Doiron's loss of bowel control during the June
10, 2016, handcuff incident, and referred to Doiron by a
derogatory name.

- CO Murphy: (a) made comments, alluding to Doiron, about
"losing" his handcuffs on an inmate's wrists, and (b)
denied Doiron access to a shower on one occasion.

- Sgt. Lydick: (a) told another inmate that Doiron was "a rat
bitch" for putting Lydick's name on a request slip, and (b)
threatened Doiron by stating "You're so fucking lucky I
have to act professional with you."

- CO Dionne and CO Miller, on one occasion, refused Doiron:
(a) a shower, and (b) time in the dayroom.

- Dionne stated that he would be writing "plenty" of
disciplinary reports against Doiron.

- CO Young, Dionne, and Cpl. Turcotte, while searching
Doiron's cell, dumped a cup of coffee and butter packets on
Doiron's legal paperwork and put several pages of Doiron's
legal work in the trash.

- When Doiron's cellmate asked Dionne why the officer was
"fucking with [Doiron's cellmate's] stuff," Dionne
responded that once Doiron stopped pursuing redress for the
June 10, 2016 handcuff incident, the officers would "stop
fucking with" Doiron's cellmate.

11

B.    Eighth Amendment Harassment Claim

Doiron alleges that defendants violated his Eighth Amendment right not to be subject to cruel and unusual punishment by subjecting him to verbal threats and harassment. Allegations of verbal threats and harassment are insufficient to assert any constitutional violation. See Shabazz v. Cole, 69 F. Supp. 2d 177, 200-01 (D. Mass. 1999) (collecting cases) (without more, verbal harassment by officers does not violate inmate's constitutional rights). The claims based on allegations regarding the officers' mishandling and careless treatment of Doiron's legal paperwork in the cell search, and the one-time refusal of Doiron's request for a shower or dayroom time also fail to state claims. Doiron has thus failed to state any claim upon which relief might be granted based on the alleged harassment and threats, and the district judge should dismiss those claims.

VII. **Medically Inappropriate Housing in SHU**

A.    Allegations

On May 22, 2016, the second shift officers in the NHSP's Reception and Diagnostics Unit ("R&D") wanted to send Doiron to SHU, but the NHSP medical department would not clear Doiron for transfer to SHU due to Doiron's mental health problems. The R&D

shift commander overrode the medical department and placed
Doiron in SHU on suicide watch for that night until they could
find other housing.  The following day, NHSP Lt. Morin and NHSP
Maj. Fouts moved Doiron into SHU.

      B.   <u>Housing Placement Claim</u>

Inmates have no constitutionally protected interest in
being housed in any particular unit or classification.  <u>See</u>
<u>Neitzke v. Williams</u>, 490 U.S. 319, 322 (1989) (prisoner has no
constitutionally protected interest in being incarcerated in a
particular housing unit).  Doiron has not asserted that the
placement in SHU subjected him to a substantial risk of serious
harm to his mental health or physical condition.  Accordingly,
while Doiron or other individuals at the prison may not agree
with his placement in SHU, without more, Doiron cannot state a
claim that his constitutional rights were violated based on that
housing decision.  The district judge should dismiss this claim.

**VIII.  <u>Endangerment Claim - Housing with a Known Gang Member</u>**

Doiron asserts that on June 20, 2016, the second shift SHU
officers moved Doiron into a cell with a known gang member.
Doiron states that the officers knew Doiron had "a longstanding
problem with prison gangs" that was documented in CORIS, the
prison's computerized offender management and information
system.

The Eighth Amendment "prohibits prison officials from depriving inmates of 'the minimal civilized measure of life's necessities.'" Brown v. Plata, 131 S. Ct. 1910, 1959 (2011) (citation omitted). "'[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Giroux v. Somerset Cty., 178 F.3d 28, 32 (1st Cir. 1999) (citations omitted).

Doiron has alleged that he was placed in a potentially dangerous housing situation with officers who were aware of the danger. At this time, however, Doiron has not alleged sufficient specific facts to state a claim upon which relief might be granted. Accordingly, in the Simultaneous Order, Doiron is granted the opportunity to amend this claim to: (1) name a defendant or defendants to the claim, (2) allege facts to show that each identified defendant was aware of a substantial risk of serious harm to Doiron that would result from his placement in a cell with a particular cellmate, (3) state what each defendant did or failed to do that placed Doiron at a substantial risk of serious harm, and (4) allege facts to show that the defendant failed to take reasonable steps to alleviate the risk.

14

## IX.   **Failure to Follow Prison Policies and Procedures**

An inmate has no freestanding constitutional right to have prison officials follow prison policies if the officials' actions are otherwise constitutional.  See Querido v. Wall, C.A. No. 10-098 ML, 2010 U.S. Dist. LEXIS 139201, at *14, 2010 WL 5558915, at *3 (D.R.I. Dec. 8, 2010), R&R adopted, 2011 U.S. Dist. LEXIS 1882, 2011 WL 63503 (D.R.I. Jan. 7, 2011).  To the extent Doiron here asserts that any defendant is liable to him for failing to follow prison policies or procedures, he cannot assert a claim upon which relief might be granted, and the district judge should dismiss those claims.

## X.   **Supervisory Liability**

Doiron has not alleged any facts indicating that any supervisory DOC or NHSP officer acted, or failed to act, in a manner that violated his rights.  Without such a showing, supervisory prison officials are not liable for the acts of their subordinates, based solely on their supervisory authority over, or awareness of, those acts.  See Soto-Torres v. Fraticelli, 654 F.3d 153, 159 (1st Cir. 2011); see also Iqbal, 556 U.S. at 676.  Accordingly, the district judge should dismiss the claims Doiron has asserted against any individual in his or her supervisory capacity.

**XI. <u>Official Capacity</u>**

The district judge should dismiss Doiron's claims against defendants in their official capacities, as such claims are barred by the Eleventh Amendment.  <u>See</u> <u>Davidson v. Howe</u>, 749 F.3d 21, 27-28 (1st Cir. 2014); <u>Coggeshall v. Mass. Bd. of Reg. of Psychologists</u>, 604 F.3d 658, 662 (1st Cir. 2010).

<strong><u>Conclusion</u></strong>

For the foregoing reasons, the district judge should dismiss all of the claims asserted in the complaint, except: (1) the Eighth Amendment excessive force, failure to protect, failure to intervene, and negligence claims, asserted against COs Nimorowski, Caruso, and Lamay, concerning the June 10, 2016 handcuffing incident; and (2) the endangerment claims concerning Doiron's placement in a cell with a known gang member, which this court has granted Doiron leave to amend in the Simultaneous Order.  The district judge should further drop all defendants from this action, except Nimorowski, Caruso, and Lamay. Doiron's medical negligence claims should be dismissed without prejudice to his ability to assert those claims in state court.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  <u>See</u> Fed.

16

R. Civ. P. 72(b)(2).  Failure to file objections within the

specified time waives the right to appeal the district court's

order.  See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15,

21-22 (1st Cir. 2014).


Andrea K. Johnstone
United States Magistrate Judge

October 26, 2016

cc:  Arthur J. Doiron, pro se

17